**SEAGRAVE TRANSP. CO., Inc. v. ESKAY COAL & FUEL CO., Inc., et al.**

**THE JAMES E. ELLIOTT.**

**THE ALLEN N. TERBELL.**

Civ. A. No. 18583.

United States District Court
E. D. New York.
March 10, 1952.

Hagen, Senecal & Eidenbach, Henry C. Eidenbach, and Richard A. Hagen, all of New York City, for libelant.

Isidore Miller, New York City, for Eskay Coal & Fuel Co., Inc.

Macklin, Speer, Hanan & McKernan, G. J. McKernan, and J. C. Hart, all of New York City, for claimant, Etco Lighterage Corp.

Purrington & McConnell, James D. Brown, and Joseph V. Gallagher, all of New York City, for Lloyd Brasileiro.

Galli & Locker, E. J. Fanning, New York City, for Bush Terminal Co.

INCH, Chief Judge.

This is an action by Seagrave Transportation Co., Inc., as owner of the coalboat James E. Elliott, to recover for damages sustained by that vessel on October 11, 1946 while moored at the dock of the Eskay Coal & Fuel Co., Inc. (hereinafter called "Eskay"), at Pier 8, Bush Terminal, Brooklyn, New York.

The libel alleges delivery of the coalboat Elliott to respondent Eskay pursuant to an oral agreement whereby libelant was to supply a barge for the transportation of a cargo of coal to Eskay's wharf, and that damage was sustained by the barge when, on the falling tide, it was squeezed between the wharf and the lighter Allen N. Terbell, which was moored on the north side of Pier 7 directly opposite the Elliott. Briefly, the libel charges the lighter Terbell with negligence in taking up a "foul berth" opposite the Elliott, and it charges Eskay with negligence in failing to shift the Elliott after those in charge of the Terbell refused to move the lighter.

The answer of Eskay admits the oral agreement and delivery of the coalboat, but alleges that the damage was caused solely by the negligence of those in charge of the lighter Terbell.

The answer of Etco Lighterage Corporation, as owner and claimant of the lighter Terbell, denies any negligence on the part of the Terbell, and alleges that the damage was caused by the negligence of Eskay and, by impleading petition, further alleges that the mooring of the lighter Terbell was under the control of Lloyd Brasileiro, or Bush Terminal Company, and that they failed to provide a safe berth to the Terbell.

Lloyd Brasileiro in its answers to the libel and impleading petition admits it assigned a berth to the Terbell, but denies that the berth was unsafe, or that its employees were responsible for the damage to the Elliott.

The answer of Bush Terminal Company admits ownership of Pier 7, but denies that the berth was unsafe, or that the Company was in any way liable for the damage to the Elliott.

While there was conflicting testimony at the trial as to certain material facts, I find that the preponderance of the credible evidence establishes the following: On October 6, 1946, pursuant to an oral agreement between libelant and respondent Eskay, the Elliott, loaded with a cargo of coal, was towed to the slip north of Pier 7 at Bush Terminal in Brooklyn. The cargo of coal was accepted by Eskay, and it began unloading the Elliott on October 7, 1946 by means of a fixed crane located at its yard on Pier 8, which was north of Pier 7.

On the morning of October 11, 1946, and for four days prior thereto, the Elliott was moored beneath the crane on Pier 8 which was approximately opposite doors numbered 32 to 42 on the north side of Pier 7. At about 8 A.M., while the tide was high, the Captain of the lighter Terbell moved his vessel to a position at the loading doors of Pier 7, opposite the crane and abreast of the Elliott, in order to complete loading a cargo of mandioca flour.

At this point the slip was approximately 75 feet wide. However, the sidewalls of the slip sloped inward so that the slip was wider at high water than at low water. High tide occurred in the slip at approximately 8:30 A.M. and low tide at approximately 2:30 P.M. Since the combined beam of the vessels measured 70.1 feet, it was obvious to respondent Eskay, and to

those in charge of the lighter Terbell, that there was serious danger of the vessels being squeezed together on the ebb tide. The crane operator of Eskay immediately protested to those in charge of the Terbell and to the Superintendent of Pier 7, an employee of Lloyd Brasileiro, but his protests were ignored. The President of Eskay also protested to the personnel aboard the Terbell and his protest was likewise ignored. Moreover, there is credible evidence that on the day before the accident the Terbell attempted to move in opposite the Elliott at low tide but that it was compelled to withdraw because there was insufficient space for the vessels to be moored side by side.

At about 10:45 A.M. the Captain of the Terbell attempted to move out, but could not do so because the bow of the heavily ladened lighter was resting on the bottom. At about 11:15 A.M. a shifting tug employed by Lloyd Brasileiro attempted, at the request of the Terbell's Master, to move the Terbell but could not do so. In the meanwhile Eskay continued to unload the Elliott and made no attempt to move the barge. The bargee of the Elliott also had knowledge of the situation, but assumed the barge was under the control of Eskay, and in any event it was physically impossible for him to shift the barge alone.

At some time between 11:15 A.M. and 2:30 P.M., when the tide continued to fall, the Elliott was damaged by being squeezed between the Terbell and the coal dock.

It is plain from these facts that the Elliott was safely moored under the crane on the morning of the accident and that it was entitled to remain there and that the Terbell, arriving later, took up a "foul berth" opposite the Elliott. The Master of the Terbell was promptly notified of the danger involved in the situation and refused to shift his lighter. Under these circumstances I find the Terbell primarily responsible for the damage to the Elliott.

Eskay, as consignee, had control of the Elliott and owed a duty to the owner of the coal barge to use reasonable care to protect the barge. Although the Elliott was safely moored in the slip and was entitled to precedence over the later arriving Terbell, nevertheless, Eskay was under an obligation to the owner of the barge to remove it from its dangerous position after those in charge of the Terbell refused to shift their vessel. Consequently, Eskay may not be relieved from all liability to the owners of the Elliott, but should be held secondarily liable for the damage to the Elliott.

I cannot find that the conduct of the bargee of the Elliott in any way contributed to the accident for the reason that he could not physically move the barge alone, and the barge was in fact under the control of Eskay who was engaged in unloading it at the time.

From the proof presented I am satisfied that at the time of the accident the bottom of the slip between Piers 7 and 8 was safe for the berthing of barges and lighters, and that Bush Terminal Company, the owner of the pier, was free from any negligence in connection with this accident.

Similarly, I cannot find that any negligence has been established on the part of Lloyd Brasileiro, the lessee of the pier. The Terbell was under the control of its Master who employed his own men to load the lighter. While Lloyd Brasileiro had a superintendent, a checker and dockmen on the pier, there is no evidence that they compelled or required the Terbell to be moored at a particular door, or that any of Lloyd Brasileiro's employees took any part in the loading or mooring of the Terbell. The deposition of the Terbell's Master makes it clear that these functions were performed by him and others hired by him.

Accordingly, libelant is entitled to an interlocutory decree for damages to the Elliott with primary liability against respondent Terbell and secondary liability against respondent Eskay, and the impleading petition of respondent Etco Lighterage Corporation, as owner and claimant of the Terbell, against Lloyd Brasileiro and Bush Terminal Company should be dismissed.

Settle decree.